**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | **:** | **Case No 15-57113** |
| **Midwest Quality Bedding, Inc.** | **:** | **Chapter 11** |
| **Debtor and Debtor-in-Possession** | **:** | **Judge Hoffman** |

**SECOND~~FIRST~~ AMENDED DISCLOSURE STATEMENT FOR
PLAN OF REORGANIZATION OF
MIDWEST QUALITY BEDDING, INC.**

Matthew J. Thompson        (0040759)
Nobile & Thompson Co. LPA
4876 Cemetery Road
Hilliard, OH 43026
(614) 529-8600
Fax: (614) 529-8656
Email:mjthompson@ntlegal.com

Counsel for Midwest Quality Bedding, Inc.

# TABLE OF CONTENTS

I.   Introduction                                               Page 5
II.  Confirmation Process and Hearing                           Page 7
     A. Confirmation                                            Page 7
     B. Confirmation Hearing                                    Page 8
III. Voting Procedures and Requirements                         Page 8
     A. Ballots and Voting Deadline                             Page 8
     B. Creditors Entitled to Vote                              Page 8
     C. Definition of Impairment                                Page 9
     D. Votes Required for Class Acceptance of
        The Plan                                                Page 10
IV.  Description of the Plan                                     Page 10
     A. Introduction                                            Page 10
     B. Definitions                                             Page 11
     C. Description of the Claims and Interests
        And Treatment Thereof                                   Page 11
        1. Unclassified Claims                                  Page 12
        2. Priority Tax Claims                                  Page 14
        3. Unimpaired Classes of Claims                         Page 14
           Class 1                                              Page 14
        4. Impaired Classes of Claims                           Page 14
           Class 2                                              Page 14
           Class 3                                              Page 14
        5. Impaired Classes of Claims
           And Interests                                        Page 15
           Class 4                                              Page 15
     D. Identification of Impaired and Unimpaired
        Classes                                                 Page 15
     E. Means of Execution                                      Page 15
        1. General Provisions                                   Page 16
        2. Objections to Claims                                 Page 16
        3. Projected Financial Performances
           and Pro Forma                                        Page 16
     F. Executory Contracts and Unexpired Leases                Page 17
     G. Retention of Certain Causes of Action                   Page 18
     H. General Provisions                                      Page 20
        1. Retention of Jurisdiction                            Page 21
        2. Modification of the Plan                             Page 22
        3. Discharge and Release; Injunction                    Page 22
        4. Disclosure of Information                            Page 23

V. Acceptance and Confirmation of the Plan                         Page 23
    A. Requirements for Confirmation                       Page 23
    B. Classification of Claims and Interests               Page 25
    C. Best Interest Test                                   Page 26
    D. Confirmation Hearing                                 Page 27
    E. Cramdown: Confirmation without
       Acceptance by All Impaired Classes               Page 28
    F. Effect of Confirmation                               Page 29
VI. General Information of the Debtor                               Page 30
    A. General                                             Page 30
    B. Pre-and Post Petition Management of Debtor           Page 31
    C. Pre-Bankruptcy Financial Performance                 Page 31
    D. Causes of Bankruptcy                                 Page 32
VII. Selected Operating and Financial Data                         Page 33
    A. Operating Profit and Loss Statements                 Page 33
    B. Representations                                      Page 33
VIII. Comparison of Plan Alternatives                              Page 34
    A. Liquidation under Chapter 7                          Page 34
       1. Administrative Expenses under
         Chapter 7                                   Page 35
       2. Liquidation Analysis of the Estate            Page 35
    B. Dismissal of the Case                               Page 36
IX. Description of Debtor After Confirmation                       Page 36
    X.    Payment of Fees; Filing of Post Confirmation
    Report                                                 Page 37
XI. Certain Federal Income Tax Consequences of the Plan  Page 37

### SECOND~~FIRST~~ AMENDED DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION
### OF MIDWEST QUALITY BEDDING, INC.

THIS SECOND~~FIRST~~ AMENDED DISCLOSURE STATEMENT ("DISCLOSURE STATEMENT") FOR THE SECOND AMENDED PLAN OF REORGANIZATION ("PLAN") FOR MIDWEST QUALITY BEDDING, INC. (MQB) DESCRIBES THE TERMS AND PROVISIONS OF THE PLAN FILED _____ (THE "PLAN"), IN THE CASE CAPTIONED ABOVE ("CASE"), PENDING BEFORE THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION ("COURT") UNDER CHAPTER 11 OF TITLE 11 OF THE UNITED STATES CODE, AS AMENDED ("CODE").  THE CASE WAS FILED NOVEMBER 3, 2015 ("PETITION DATE").

THE STATEMENTS CONTAINED IN THIS ~~FIRST AMENDED~~ DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND NEITHER DELIVERY OF THIS ~~FIRST AMENDED~~ DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN CONNECTION WITH THIS ~~FIRST AMENDED~~ DISCLOSURE STATEMENT SHALL, UNDER ANY CIRCUMSTANCES, CREATE ANY IMPLICATION THAT THERE HAS NOT BEEN ANY CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE THIS ~~FIRST AMENDED~~ DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THIS ~~FIRST AMENDED~~ DISCLOSURE STATEMENT WERE COMPILED.  THIS~~S FIRST~~

AMENDED DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN, AND NOTHING CONTAINED IN IT SHALL CONSTITUTE, OR BE DEEMED CONCLUSIVE, ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF ANY REORGANIZATION ON HOLDERS OF CLAIMS OR INTERESTS IN CONNECTION WITH SUCH REORGANIZATION.

THIS ~~FIRST AMENDED~~ DISCLOSURE STATEMENT HAS BEEN APPROVED BY ORDER OF THE COURT, DATED _____, 201_ AS CONTAINING INFORMATION OF A KIND AND IN SUFFICIENT DETAIL TO ENABLE A REASONABLE HYPOTHETICAL INVESTOR TYPICAL OF HOLDERS OF CLAIMS OR INTERESTS OF THE RELEVANT CLASSES TO MAKE AN INFORMED JUDGMENT CONCERNING THE PLAN. **THE COURT'S APPROVAL OF THIS ~~FIRST AMENDED~~ DISCLOSURE STATEMENT, HOWEVER, DOES NOT CONSTITUTE A RECOMMENDATION BY THE COURT EITHER FOR OR AGAINST THE PLAN.**

A BALLOT ACCOMPANIES THIS ~~FIRST AMENDED~~ DISCLOSURE STATEMENT FOR USE IN VOTING ON THE PLAN.

I.      **INTRODUCTION**

Midwest Quality Bedding, Inc., debtor and debtor in possession (the "Debtor") hereby submits this ~~First Amended~~ Disclosure Statement pursuant to § 1125 of the United States Bankruptcy Code (the "Code").  This ~~First Amended~~ Disclosure Statement is filed for the Court's approval for submission to all of the known holders of claims or interests with respect to Debtor to solicit the acceptance of the "Second~~First~~ Amended

Plan of Reorganization for Midwest Quality Bedding, Inc. filed _____ ("Plan" or "Plan of Reorganization").  The purpose of this ~~First Amended~~ Disclosure Statement is to provide to creditors of Debtor adequate information of a kind and in sufficient detail about Debtor, its business, and the Plan of Reorganization so that creditors may make an informed judgment with respect to accepting or rejecting the terms of the Plan.

Each holder of a claim or interest is encouraged to read the contents of this ~~First Amended~~ Disclosure Statement before making a decision to accept or reject the Plan. The terms used in this ~~First Amended~~ Disclosure Statement have the same meaning as defined in the Plan, unless the context otherwise requires.  A copy of the Plan is attached hereto and incorporated by reference as though fully rewritten herein as Exhibit "A".

NO RELIANCE SHOULD BE PLACED ON PRIOR CORRESPONDENCE OR DISCUSSIONS WITH DEBTOR OR ITS COUNSEL REGARDING THIS ~~FIRST AMENDED~~ DISCLOSURE STATEMENT OR THE  PLAN OF REORGANIZATION. CREDITORS OR INTEREST HOLDERS SHOULD RELY ONLY UPON THE INFORMATION CONTAINED HEREIN. EXCEPT AS SET FORTH IN THE ~~FIRST AMENDED~~ DISCLOSURE STATEMENT AND ITS EXHIBITS, NO REPRESENTATIONS CONCERNING DEBTOR, ITS ASSETS, ITS PAST OR FUTURE OPERATIONS, OR THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN.  ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS ~~FIRST AMENDED~~ DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR DEBTOR.

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS ~~FIRST AMENDED~~ DISCLOSURE STATEMENT. ALTHOUGH DEBTOR BELIEVES ALL INFORMATION HEREIN IS ACCURATE, DEBTOR IS NOT ABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY. THE INFORMATION CONTAINED IN THIS FIRST AMENDED DISCLOSURE STATEMENT HAS BEEN SUBMITTED BY DEBTOR'S MANAGEMENT BASED UPON DEBTOR'S RECORDS, CURRENT MARKET CONDITIONS, PAST EXPERIENCE AND GENERAL PROJECTIONS PERTAINING TO THE OPERATION OF THE BUSINESS.

**THE APPROVAL BY THE COURT OF THIS ~~FIRST AMENDED~~ DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR A GUARANTY OF THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

NOBILE & THOMPSON CO LPA ("COUNSEL"), COUNSEL TO DEBTOR, IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THE ~~FIRST AMENDED~~ DISCLOSURE STATEMENT IS WITHOUT INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. COUNSEL HAS NOT VERIFIED THE INFORMATION CONTAINED IN THIS ~~FIRST~~ DISCLOSURE STATEMENT, ALTHOUGH IT HAS NO ACTUAL KNOWLEDGE OF ANY INACCURACIES.

II.    **CONFIRMATION PROCESS AND HEARING**

A.    **CONFIRMATION PROCESS**

As a creditor or interest holder in an impaired class, your vote may be important. If a class is <u>NOT</u> impaired, you are <u>NOT</u> entitled to vote. IF YOU HAVE A DOUBT, YOU SHOULD VOTE.  The Plan may be confirmed by the Court if it is accepted by the holders of two-thirds (2/3rds) in dollar amount and more than one-half (1/2) in number of claims in each impaired class of claims voting on the Plan.  All creditors entitled to vote will receive a ballot.  In the event the requisite acceptance is not obtained, the Court may nevertheless confirm the Plan if the Court finds that it accords fair and equitable treatment to the class or classes rejecting it.

MANAGEMENT OF DEBTOR URGES THE CREDITORS TO VOTE IN FAVOR OF THE PROPOSED PLAN.

**B.**   <u>**CONFIRMATION HEARING**</u>

On _____ ___, 201_, the Court entered an order fixing _____ ___, 201_, at ___:___ __.m. in the United States Bankruptcy Court, Southern District of Ohio, 170 North High Street, Courtroom ___, Columbus, Ohio 43215 as the date, time, and place for hearing on confirmation of the Plan, and fixing _____ __, 201_ as the last date for the filing of any objections to confirmation of the Plan and as the last day to file Ballots accepting or rejecting the Plan.  The hearing on confirmation may be adjourned from time to time without further notice, with the exception of in-court announcement of adjourned dates and times at the hearing on confirmation or any adjournment thereof.

**III.**   <u>**VOTING PROCEDURES AND REQUIREMENTS**</u>

**A.**   <u>**BALLOTS AND VOTING DEADLINE**</u>

8

A ballot to be used for voting to accept or reject the Plan is enclosed with this Disclosure Statement mailed to creditors entitled to vote.  See Exhibit "B".  The creditor must (1) carefully review the ballot and instructions thereon; (2) complete and sign the ballot; and, (3) return it to the address indicated on the ballot by the Court-established deadline in order for the ballot to be considered for voting purposes.

### B.   CREDITORS ENTITLED TO VOTE

Any creditor of Debtor whose claim is impaired under the Plan is entitled to vote, if either (1) its claim has been scheduled by Debtor (and such claim is not scheduled as disputed, contingent or unliquidated); or (2) it has filed a Proof of Claim on or before the last date set by the Court for such filings.  Any claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Court temporarily allows the claim upon Motion by a creditor to whose claim Debtor has objected, in an amount, which the Court deems proper for the purpose of accepting or rejecting the Plan.  Such motion must be heard and determined by the Court prior to the date established by the Court to confirm the Plan.  In addition, a creditor's vote may be disregarded if the Court determines that the creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the Code.

### C.   DEFINITION OF IMPAIRMENT

Pursuant to the requirements of § 1126 of the Code, each Class of Allowed Claims or Interests which is impaired under the  Plan is entitled to vote to accept or reject the Plan.

Under § 1124 of the Code, a class is impaired under a plan of reorganization unless, with respect to each claim or interest of such class, the Plan:

(1)      leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or interest; or

(2)      notwithstanding any contractual provision or applicable law that entitles the holder of a claim or interest to demand or receive accelerated payment of his claim or interest after the occurrence of a default:

      (a)      cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in § 365(b)(2) of the Code;

      (b)      reinstates the maturity of such claim or interest as it existed before the default;

      (c)      compensates the holder of such claim or interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

      (d)      does not otherwise alter the legal, equitable, or contractual rights to which the claim or interest entitles the holder of such claim or interest; or

The following Classes of Claims and/or Interests are impaired under the Plan, and holders of Allowed Claims in each Class are entitled to vote to accept or reject the Plan:

**CLASS 2**      **Allowed Secured Claims of Ken Hoffman**

**CLASS 3**      **Allowed General Unsecured Claims**

The following Classes of Claims and/or interests are not impaired and/or are not entitled to vote to accept or reject the Plan.

**CLASS 1**      **Secured Claim of Huntington National Bank**

**CLASS 4**      **Allowed interests**

**D.**      **VOTES REQUIRED FOR CLASS ACCEPTANCE OF THE PLAN**

As a condition to confirmation, the Code requires that each impaired class of claims under a plan of reorganization accept such a plan, subject to the exceptions described below.

Section 1126 of the Code defines acceptance of a plan by a class of claims as acceptance by holders of two-thirds (2/3$^{rds}$) in dollar amount and a majority in number of claims of that class, but only those who actually vote to accept or reject the plan count in determining such ratio.  Holders of claims who fail to vote are not counted as either accepting or rejecting the plan.

## IV.   DESCRIPTION OF THE PLAN

### A.   INTRODUCTION

A summary of the principal provisions of the Plan is set forth below.

THE AMOUNT OF CLAIMS IN THE VARIOUS CLASSES AND THE NUMBER OF HOLDERS IN SUCH CLASSES CANNOT NOW BE EXACTLY DETERMINED DUE TO VARIOUS CIRCUMSTANCES INCLUDING THE FACT THAT DEBTOR MAY DEEM CERTAIN FILED CLAIMS OBJECTIONABLE. THEREFORE, THE AMOUNTS OF CLAIMS IN THE VARIOUS CLASSES SET FORTH HEREIN ARE ESTIMATES.  HOWEVER, DEBTOR BELIEVES THAT THE ESTIMATES UTILIZED HEREIN ARE REASONABLE.

### B.   DEFINITIONS

A number of capitalized terms are defined for use in the Plan.  Capitalized terms used herein and not defined herein have their respective meanings assigned to them in the Plan.

### C.   DESCRIPTION OF CLAIMS AND INTERESTS AND TREATMENT THEREOF

Section 1123 of the Code provides that a plan of reorganization shall classify the claims of a debtor's creditors.  No payments will be made except as set forth in the Plan.

The Plan divides claims and interests into classes and sets forth the treatment afforded to each class.  Creditors should note that only Allowed Claims in each class will be paid in accordance with the provisions under the Plan.  Claims that are not Allowed Claims will not be paid.

In accordance with § 1123(a)(1) of the Code, Allowed Claims having priority under §§ 507(a)(1) and 507(a)(8) have not been classified and are excluded from the foregoing Classes.

### Unclassified Claims.

## Administrative Claims Generally.

Except as otherwise provided for herein, on, or as soon as reasonably practicable after, the latest of: (i) the Initial Distribution Date; (ii) the date such Administrative Claim becomes an Allowed Administrative Claim; or (iii) the date such Administrative Claim becomes payable pursuant to any agreement between the Debtor and the Holder of such Administrative Claim, each Holder of an Allowed Administrative Claim not already paid in the ordinary course of business shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim: (x) Cash equal to the unpaid portion of such Allowed Administrative Claim; or (y) such other treatment the Reorganized Debtor and such Holder shall have agreed upon in writing.

### Professional Fee Claims.

Professional Fees shall be paid as follows:

Debtor's Attorney: Debtor's attorney fees shall be paid as follows:

Debtor's attorney shall be paid $10,000 upon the later of (i) the Effective Date of the Plan and (ii) entry of an order by the Bankruptcy Court allowing and awarding fees and expenses to Debtor's counsel.  Afterwards Debtor's attorney shall receive $1,000 per month for the next ten (10) ten months for a total of $20,000.

Committee Attorneys:  Committee attorney fees shall be paid as follows:

Committee attorneys shall have their fees capped at a maximum of $20,000. The Committee aAttorneys shall be paid $10,000 upon the later of (i) the Effective Date of the Plan and (ii) entry of an order by the Bankruptcy Court allowing and awarding fees and expenses to the Committee's counsel in such amount. Afterwards the Committee aAttorneys shall receive $1,000 per month for the next ten (10) ten months for a total of $20,000.

**Westpointe Claim.**

The Allowed Administrative Claim of Westpointe Plaza, L.P. in the amount $5,801.65 shall be paid by the Reorganized Debtor over 10 months in the amount of $580.16 per month commencing upon the Effective Date until paid in full.

**Easton Claim.**

The Allowed Administrative Claim of CRI Easton Square, LLC in the amount of $12,128, 58 shall be paid by the Reorganized Debtor over 10 months in the amount of $1,212.85 per month commencing upon the Effective Date until paid in full.

**Priority Tax Claims.**

> The Allowed Priority Tax Claim of the Ohio Bureau of Workers' Compensation  will be paid a total of $15,525.00, over a period of 45 months, in the amount of $345.00 per month pursuant to 11 U.S.C. 1129 (a)(9)(C).

**Unimpaired Classes of Claims**.

**Class 1 Allowed Secured Claims of Huntington National Bank (Lender)**.  Class 1 consists of the Allowed Secured Claims of Lender  which are secured by its Liens and security interests upon the Lender's Collateral. As of the Petition Date, the aggregate amount of Lender's Claims was $101,370.85, and Lender's Allowed Class 1 Secured Claim will be in the approximate amount of $_____ the value of the Lender's Collateral as of the Effective Date.

> Lender has three notes which are delineated in its proof of claim as follows: 1) Note 26 (proof of claim 1-1) shall be paid $226.45 per month at an interest rate of prime plus 1.5%. Note 34  (proof of claim 2-1) shall remain unimpaired.  Note 42 (proof of claim 3-1) shall remain unimpaired. On the Effective Date, all Lender's Collateral shall be transferred to the Reorganized Debtor subject to the Allowed Class 1 Secured Claim.  The Allowed Class 1 Secured Claim of Lender shall not be discharged, but shall be assumed by the Reorganized Debtor on the Effective Date and paid out pursuant to the Cash Collateral Order gGranted by this Court on January 8, 2016 with the aforementioned modifications.

**Impaired Classes of Claims**

**Class 2 Allowed Secured Claim of Hoffman.**  In full and final satisfaction, settlement, release, extinguishment and discharge of his Allowed Secured Class 2 Claim, Hoffman shall receive: (a) a new loan with Reorganized Debtor in the original principal amount of $144,808.11, which shall be secured by a security interest in substantially all assets of Reorganized Debtor subordinate to  the Liens in favor of Lender on account of Lender's Allowed Class 1 Claim.

**Class 3 Allowed General Unsecured Claims**.   This Class consists of Allowed General Unsecured Claims of creditors of the Debtor, other than the Lender and any Insiders.  Holders of Allowed General Unsecured Claims shall receive, on a pro rata basis, a share of $50,000 which shall be paid to

Holders of Allowed Class 3 claims by the Reorganized Debtor within 30 days of the Effective Date of the Plan.

**Impaired Classes of Claims and Interests**.

**Class 4 Allowed Interests**.  **Class 4 Allowed Interests.**  This Class consists of Allowed Interests of equity interest Holders of the Debtor.    All Allowed Interests shall receive no Distributions under the plan.  The equity interest holders of the Debtor are Ken Hoffman and Jerry Fogt.  Jerry Fogt shall contribute  the amount of $50,000 in favor of the Reorganized Debtor. This amount  shall serve as  Mr. Fogt's contribution ofnew value pursuant to 11 USC Sec. 1129(B)(2)(b) in the Reorganized Debtor. Neither Mr. Hoffman nor Mr, Fogt shall be paid any monies pursuant to the Plan  on account of their interests but only Mr. Fogt shall retain equity interest in the Reorganized Debtor.

~~This Class consists of Allowed Interests of equity interest Holders of the Debtor.   All Allowed Interests shall receive no Distributions under the plan.  The equity interest holders of the Debtor are Ken Hoffman and Jerry Fogt.  Ken Hoffman shall execute a note in the amount of $25,000 in favor of the Reorganized Debtor.  Jerry Fogt shall execute a note in the amount of $25,000 in favor of the Reorganized Debtor. These loans shall serve as Mr. Hoffman's and Mr. Fogt's contribution to new value pursuant to 11 USC Sec. 1129(B)(2)(b) in the Reorganized Debtor. Neither Mr. Hoffman nor Mr. Fogt shall be paid any monies pursuant to the Plan but shall retain equity interest in the Reorganized debtor.~~

## D.   IDENTIFICATION OF IMPAIRED AND UNIMPAIRED CLASSES

Under the Plan, all Classes except Class 1 and 4 are impaired and are entitled to vote to accept or reject the Plan.

## E.   MEANS OF EXECUTION

### 1.   General Provisions

The Plan provides that all payments and other distributions of consideration described in the Plan will be made as set forth in the Plan unless an objection to a particular Claim has been filed.  In such case, the payments or other distributions set forth in the Plan as to that particular claimant will be made or commenced on the later of the

first day of the calendar month following the Claim Determination Date or the date provided for in the Plan.  At that time the payment or other distribution will be made by Debtor to such claimant so as to provide such claimant with an amount equal to the aggregate percentage of payments and distributions made to date to all other holders of Allowed Claims in the same class whose particular claims were not subject to an objection.

The Plan further provides that, upon the Effective Date, all right, title and interest in and to Debtor's assets which constitute property of the estate will vest in Debtor free and clear of all claims, liens and interest of creditors and interest holders except those liens or interests retained or expressly provided pursuant to the Plan.

The Plan further provides that all payments or other distributions provided for under the Plan will be made from existing funds of Debtor as of the Effective Date, funds generated subsequent to the Effective Date by Debtor through its business operations, funds realized through the sale by Debtor of any of its property, funds realized through the prosecution and enforcement of claims, demands and causes of action retained by Debtor pursuant to the Plan, less any costs associated with recovering such funds, and the proceeds of any financing as described below, as may be deemed appropriate by Debtor.

## 2. **Objections to Claims**

Under the Plan, Debtor will have the exclusive right to review and, if appropriate, pursue all objections to claims asserted against Debtor's estate in accordance with the Code.  Debtor, should it choose to file such objections, will diligently prosecute any such objection.  The Plan fixes a deadline of ninety (90) days after the Effective Date within which Debtor must file any and all objections to such Claims, or be forever barred.

3.      **Projected Financial Performance and Pro Forma**

Debtor believes it will achieve the profitability levels as set forth on the pro forma attached hereto as Exhibit "D".  This cash-flow projection shows that the Debtor, although a seasonal business, is viable and has income and future contracts for the next year and beyond.   The Profit and Loss Budget Overview shows a cash infusion of $50,000 in March, 2017, the projected effective date of the Plan.  This cash infusion, which is Fogt's ~~and Hoffman's~~ new value contribution to the Reorganized Debtor pursuant to 11 USC Sec. 1129(B)(2)(b), along with monies already in the Debtor's bank account, give the Debtor a<u>n adequate</u> monetary cushion to keep it viable during the Debtor's negative income months.  Accordingly, Debtor will be able to fund both its ongoing operations, as well as payments to be made pursuant to the Plan, on a post-confirmation basis.  Based on the foregoing, Debtor's Plan is feasible.

F.      **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

The Code gives Debtor the power, subject to the approval of the Court, to assume or reject executory contracts or unexpired leases.  Rejection or assumption may be effected either pursuant to a plan of reorganization or by order of the Court entered upon application of Debtor after notice and a hearing.  If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection of the executory contract and unexpired leases, and the damages are limited under the Code.  In the case of assumption of an executory contract or unexpired lease, the Code requires that Debtor promptly cure any existing default (other than certain types of default based upon bankruptcy or Debtor's financial

condition) and provide adequate assurances of future performance under such executory contracts or unexpired leases.

Pursuant to the Plan, all executory contracts and unexpired leases neither specifically assumed under the Plan, nor previously assumed or rejected in the Case, will be deemed rejected as of the Petition Date.  Confirmation will constitute approval by the Court of any and all such rejections.  Debtor had four leases for retail stores as of the Petition Date.at the time of the filing of the Chapter 11 petition.  The Debtor has rejected the lease with Westpointe Plaza, L.P. (Westpointe) for the property located at 5280 Westpointe Plaza, Columbus, Ohio during the Chapter 11 Case.  Furthermore the Debtor has rejected the lease with CRI Easton Square, LLC (Easton) for the property located at 3860 Morse Road, Columbus, Ohio during the Chapter 11 Case.   The Debtor will assume the lease with OH Retail III TT, LLC (Taylor) for the property located at 2783 Taylor Road, Reynoldsburg, Ohio.  The Debtor will also assume the lease with OH Retail TT, LLC (Tuttle) for the property located at 5820 Britton Parkway, Dublin, Ohio as of the Effective date of the Plan and assigns all of its rights and obligations thereunder to the Reorganized Debtor.  .

### G.    RENTENTION OF CERTAIN CAUSES OF ACTION

The Plan provides that Debtor will retain, upon the Effective Date, the Retained Actions, which term is defined under the Plan as any and all claims, demands, and causes of action, including all of the claims of the kind specified in §§ 544, 547, 548, 549, 550, 551, and 553(b) of the Code, accruing prior to the Effective Date in respect of Debtor against any person or entity, and further including those claims, demands, and causes of actions listed on Exhibit 1 to the Plan.   Further, under the Plan, Debtor may, in its sole

discretion, determine to prosecute any Retained Action, and if prosecuted, compromise and settle any such Action on such terms as it deems reasonable with no further notice to holders of Allowed Claims or of Allowed Interests being necessary.  The Code permits Debtor to prosecute certain causes of action for the benefit of Debtor's creditors in an effort to enhance the value of an estate and maximize any distribution of funds to creditors.  Included among these causes of action are the recovery of payments made by Debtor to or for the benefit of the creditors within ninety (90) days prior to the bankruptcy filing (or, if the recipient of the payment or benefit was an insider, payments made within one (1) year prior to filing); the recovery of Debtor's property transferred within two (2) years prior to filing if made with an intent to hinder, delay or defraud a creditor or transferred by an insolvent Debtor in exchange for less than reasonably equivalent value, the recovery of Debtor's estate's property transferred after the commencement of the Case without authorization under the Code or by the Court; and the recovery of any transfer of Debtor's property that could be set aside, under non-bankruptcy law, by a hypothetical judgment lien creditor, by a hypothetical unsatisfied execution creditor, or by a hypothetical bona fide purchaser of real property.

The Plan further provides that Debtor may, in its sole discretion and on such terms as it deems reasonable, and in such amounts as it may solely determine, apply the Retained Actions Net Proceeds to satisfy the obligations owing hereunder with respect to the following claims and Classes of claims, (1) the Allowed Claims of Governmental Units having priority under § 507(a)(8) of the Code, (2) the Allowed Secured Claims of Huntington National Bank under Class 1 of the Plan, and (3) the Allowed Claims comprising Class 3 of the of the Plan, to the extent that such obligations owing hereunder

to Governmental Unit Claims have not theretofore been paid pursuant to the distributions and payments contemplated in the Plan.   Debtor may also, under the Plan, in its sole discretion, determine to retain any and all of the Retained Actions Net Proceeds in satisfaction of its working capital needs or for any other permissible manner.   Parties are directed to review Exhibit 1 of the Plan for a listing of the Retained Actions that Debtor believes may exist.   At this date there are no contemplated Retained Actions to be pursued by the Debtor.   Given the speculative nature of the Retained Actions, it is impossible to predict with any degree of certainty what, if any, recovery will be obtained thereon.   The Debtor is not relying on the potential recoveries from these Retained Actions to support the feasibility of its Plan.

### H.     GENERAL PROVISIONS

The Plan provides that Confirmation will constitute authorization by the Court for Debtor's use of funds of the estate to meet any cash requirements in the Case.   In addition, the Plan provides that, notwithstanding any other provision therein specifying a date or time for the payment or distribution of consideration thereunder, payments and distributions in respect to any claim which at such date is disputed, unliquidated, or contingent will not be made until such Claim becomes an Allowed Claim, whereupon such payments and distributions will be made promptly, or as otherwise provided for in the Plan.

The Plan further provides that all obligations of Debtor thereunder are expressly contingent upon Confirmation.   Consequently, Debtor may, for any reason, at any time prior to Confirmation withdraw as a proponent of the Plan by filing a notice of such withdrawal with the Court.   In such event, the Plan will immediately be withdrawn from

consideration for Confirmation and neither Debtor nor any of its officers, directors, shareholders, or agents, will have any further obligations under the Plan.

Additionally neither the filing of the Plan, nor any statement or provision contained therein, nor the taking by Debtor or any other party of any action with respect to the Plan will (a) be deemed to be an admission against interest; (b) until the Effective Date, be or be deemed a waiver of any rights which any party might have against Debtor or any of its property or against any other party; and (c) until the Effective Date, be or be deemed to be a waiver of any rights which Debtor, as a debtor or as a debtor-in-possession under the Code, might have against any holder of an Allowed Claim or Allowed Interest, against any other party, or against the property thereof.  Until the Effective Date, all such rights will be specifically reserved.  In the event that the Effective Date does not occur, neither the Plan nor any statement contained herein, may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the Case.

The Plan further provides that, notwithstanding anything contained in the Plan, Debtor may prepay any payment or installment due under the Plan without any penalty and may negotiate any compromise or settlement with a party to whom, or to the extent for whom, any such payment or installment is due on such terms and conditions as may be mutually acceptable.

## 1. __Retention of Jurisdiction__

Pursuant to the Plan, the Court will retain jurisdiction of these proceedings for various purposes, including the determination of the classification, validity and amount of Claims; the allowance or disallowance any and all Claims herein to which any proper

party to these proceedings objects, including Debtor; the determination of damages suffered by any party to an executory contract rejection; fixing compensation allowances and reimbursement of expenses for administrative claimants for services rendered through the Effective Date; and hearing and determining any and all motions, applications, adversary proceedings, and contested or litigated matters arising in or in any way related to the claims, demands, and causes of action retained by Debtor pursuant to Article the Plan.

## 2.      <u>Modification of the Plan</u>

The Plan provides that Debtor may propose amendments or modifications to the Plan at any time prior to Confirmation. After Confirmation, Debtor may, with approval of the Court, and so long as it does not materially or adversely affect the interests of parties in interest, remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order in such a manner as may be necessary to carry out the purposes and effect of the Plan.

## 3.      <u>Discharge and Release; Injunction</u>

Pursuant to section 1141(d)(3) of the Bankruptcy Code, entry of the Confirmation Order will not discharge Claims against the Debtor; provided however, no Holder of a Claim or Interest may, on account of such Claim or Interest, seek or receive any payment or other Distribution from, or seek recourse against, the Debtor, the Estate, the Estate Assets, Lender's Collateral or the Releasees, or their respective successors, assigns or the Properties, except as expressly provided in this Plan.

*The Plan also provides that, upon Confirmation, all entities that have held, currently hold or may hold a Claim or other debt or liability against Debtor will be permanently enjoined from taking any of the following actions against the Debtor: (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff or right of subrogation of any kind against any debt, liability or obligation due to Debtor; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.*

## 4.    Disclosure of Information

DEBTOR URGES YOU TO READ CAREFULLY THE PLAN, THIS FIRST AMENDED DISCLOSURE STATEMENT AND ITS EXHIBITS.  THE PLAN, THIS ~~FIRST AMENDED~~ DISCLOSURE STATEMENT AND ITS EXHIBITS ARE INTENDED TO PROVIDE YOU WITH AS MUCH INFORMATION AS REASONABLY POSSIBLE, GIVEN THE LIMITATIONS OF SPACE AND TIME, WITH WHICH TO DECIDE WHETHER TO ACCEPT OR REJECT THE PLAN DESCRIBED HEREIN.

The information in this ~~First Amended~~ Disclosure Statement and the Exhibits regarding Debtor, its business operations, the value of its assets or the value of any benefits offered pursuant to the Plan, is expressly confined to the context of this First Amended Disclosure Statement.  Debtor specifically rejects the use of any such information outside of consideration of this ~~First Amended~~ Disclosure Statement.

23

## V.     ACCEPTANCE AND CONFIRMATION OF THE PLAN

A summary of certain requirements of the Code with respect to acceptance and confirmation of the Plan is set forth below.  All defined terms used in this Article IV without definition shall have the meaning assigned to such terms in the Plan.

### A.     REQUIRMENTS FOR CONFIRMATION

At the Confirmation Hearing (as defined below), in order to confirm the Plan, the Court will determine whether the requirements of § 1129 of the Code have been satisfied with respect to the Plan.  If the requirements of § 1129 have been met, the Court will enter an order confirming the Plan.

The requirements of § 1129 relevant to this Plan are as follows:

1.     The Plan complies with the applicable provisions of the Code.

2.     Debtor has complied with the applicable provisions of the Code.

3.     The Plan has been proposed in good faith and not by any means forbidden by law.

4.     Any payment made or to be made from property of the estate by Debtor or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with the Case, or in connection with the Plan and incident to the Case, has been disclosed to the Court, and if such payment is made prior to confirmation of the Plan, is reasonable, or if such payment is to be fixed after Confirmation of the Plan, is subject to the approval of the Court as reasonable.

5.     Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer or voting trustee of the Debtor, of an affiliate of the Debtor participating in a plan with any such Debtor, or of a successor to any such Debtor under the Plan, and the appointment to, or continuance in, such office of such individual is consistent with the interests of such Debtor's creditors and with public policy, and Debtor has disclosed the identity of any insider of Debtor that will be employed or retained by the reorganized Debtor and the nature of any compensation for such insider.

6.    With respect to each impaired class of claims under the Plan, either each holder of a claim of such class has accepted the Plan, or will receive or retain under the Plan on account of such claim property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if Debtor against which it holds a claim were liquidated on such date under Chapter 7 of the Code unless the creditor makes a 11 U.S.C. sec. 1111(b) election..  For further discussion of this requirement, see "Acceptance and Confirmation of the Plan -- Best Interest Test".

7.    Each Class of claims or interests under the Plan has either accepted the Plan or is not impaired under the Plan.  (Alternatively, the Plan may be confirmed over the dissent of a Class of claims or interests if the "cram-down" requirements of the Code are met. See "Acceptance and Confirmation of the Plan – Cramdown - Confirmation without Acceptance by All Impaired Classes".)

8.    Except to the extent that the holder of a particular claim against Debtor has agreed to a different treatment of such claim, the Plan provides that administrative expenses and priority claims (other than Allowed Claims of Governmental Units having priority under § 507(a)(8) of the Code) will be paid in full on the Effective Date of the Plan and that Allowed Claims of Governmental Units having priority under § 507(a)(8) of the Code will receive on account of such claims deferred cash payments, over a period not exceeding five (5) years after the date of order for relief, of a value, as of such Effective Date, equal to the allowed amount of such claim.

9.    At least one (1) impaired class of claims has accepted the Plan, determined without including any acceptance of the Plan by any insider of Debtor holding a claim of such class.

10.    Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Debtor or any successor to Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

Debtor believes that the Plan satisfies all the statutory requirements of Chapter 11 of the Code, that Debtor has complied or will have complied with all of the requirements of chapter 11 of the Code, and that the proposal of the Plan is made in good faith.

B.    **CLASSIFICATION OF CLAIMS AND INTERESTS**

Section 1123 of the Code requires that a plan of reorganization designate classes of claims (other than certain priority claims).  Section 1122 of the Code provides that a creditor's claim may be placed in a class only if such claim is "substantially similar" to the other claims or interests.  Debtor believes that the classification system in the Plan satisfies the Code's standards.

The Plan divides claims against and interests in Debtor into classes.  A single claim may be divided into different parts for classification and treatment under the Plan, in that a claim is in a particular class only to the extent that it fits within the description of that class and is in another, different class to the extent that it fits within the description of such other class.

### C.    BEST INTEREST TEST

Notwithstanding rejection of the Plan by a holder of a claim in an impaired class under the Plan, in order to confirm the Plan, under § 1129(a)(7) of the Code, the Court may determine that, with respect to each rejecting holder of a claim in such impaired class, the Plan is in the "best interest" of each holder of a claim within such Class.  The "best interest" test requires the Court to find that the Plan provides to each such holder of a claim a recovery, which has a present value at least equal to the present value of the distribution that such holder would receive from Debtor, if Debtor were instead liquidated under Chapter 7 of the Code.

To calculate what non-accepting holders would receive if Debtor were liquidated under chapter 7 of the Code, the Court must first determine the dollar amount that would be generated upon disposition of Debtor's assets.  The aggregate amount so generated would be reduced by the costs of liquidating Debtor.  Such costs would be expected to

include the fees of a trustee (as well as those of counsel and other professionals that such trustee would employ), selling expenses, and claims arising from a trustee's rejection of any obligations assumed or otherwise incurred during the pendency of Debtor's Case.

Further, distributions to unsecured creditors in a Chapter 7 liquidation would not occur immediately upon completion of Debtor's liquidation, but would be delayed pending determination of the aggregate amount of unsecured claims against Debtor. Such a determination could entail delay and lost opportunity cost even for those creditors whose claims were ultimately allowed.

For a further discussion of a hypothetical liquidation of Debtor, see Article _VIIIIX_ infra.

### D.    CONFIRMATION HEARING

Section 1128(a) of the Code requires the Court, after notice, to hold a hearing on confirmation of the Plan (the "Confirmation Hearing"). THE CONFIRMATION HEARING FOR THIS PLAN IS SCHEDULED TO BEGIN ON _____ ____, 2017 at __:__ _.M.

Section 1128(b) provides that any party in interest of Debtor may object to confirmation of the Plan. Any objection to confirmation of the Plan together with proof of service must be filed with the Court electronically, signed and verified by electronic means that comply with the Court's "Southern District of Ohio Administrative Procedures for Electronic Case Filing". See the Court's website at http://www.ohsb.uscourts.gov. A copy of any such objection shall be served upon counsel for Debtor by ordinary U.S. mail, postage prepaid, on or before _____ ___, 2017 at the following address:

Matthew J. Thompson
NOBILE  & THOMPSON CO LPA
4876 Cemetery Road
Hilliard, OH 43026

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED,

IT WILL NOT BE CONSIDERED BY THE COURT.

### E.      **CRAMDOWN: CONFIRMATION WITHOUT ACCEPTANCE BY ALL IMPAIRED CLASSES**

The Code contains provisions for confirmation of a plan of reorganization even if

the plan is not accepted by all impaired classes, provided that at least one impaired class

of claims has accepted it (determined without including any acceptance by any insider of

Debtor holding a claim of such class).  These "cramdown" provisions, for confirmation

of a plan despite the non-acceptance of one or more impaired classes of claims or

interests, are set forth in § 1129(b) of the Code.

In the event that any impaired class of claimants does not accept the Plan by the

requisite majorities, Debtor must demonstrate to the Court, with respect to each such

impaired class, that the Plan "does not discriminate unfairly" and is "fair and equitable"

with respect to that class.  If Debtor is able to demonstrate these factors, the Court may

still confirm the Plan.

Additionally, under the Code, the Plan is considered "fair and equitable" with

respect to a class of claims if the following conditions are met:

1.      **Secured Claims**. Either (a) each impaired secured creditor retains the
liens securing such claims to the extent of the allowed amount of such

claim and receives on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the Plan, of at least the value of such holder's interest in the estate's interest in such property; or (b) the Plan provides for the sale, subject to § 363(k) of the Code of any property free and clear of any liens in favor of creditors of Debtor, then such liens shall attach to the proceeds of such sale and the treatment of such liens on proceeds shall satisfy the requirements of either clauses (a) or (c) herein; or (c) the secured creditor receives under the Plan the "indubitable equivalent" of its claim.

2.   **Unsecured Claims**. Either (a) each impaired unsecured creditor receives or retains property of a value, as of the effective date of the Plan, equal to the amount of its allowed claim; or (b) the holder of any claim or interest that is junior to the claims of the dissenting class will not receive or retain any property under the Plan.

Debtor believes that the Plan does not discriminate unfairly with respect to any impaired classes and meets the "fair and equitable" test with respect to all impaired classes of Allowed Secured Claims.  Therefore, the Plan may be confirmed by the Court even if it is not accepted by the holders of Allowed Secured Claims in an impaired class. However, in that under the Plan, the interest of the Shareholder is unimpaired, and holders of unsecured Allowed Claims are neither receiving nor retaining property of a value, as of the Effective Date of the Plan, equal to the amount of their Allowed Claims, the Plan does not, on its face, meet the "fair and equitable" test with respect to holders of unsecured Allowed Claims.  Thus, if any Class of the following Allowed Claims (Class 1, Class 2,  and Class 3) votes to reject the Plan, the Plan cannot be confirmed under § 1129(b) of the Code.

### F.   EFFECT OF CONFIRMATION

Except as otherwise provided in the Plan or Confirmation Order, and in addition to other consequences of Confirmation as disclosed herein, entry by the Court of the Confirmation Order will constitute the approval of all rejections of executory contracts

and unexpired leases not expressly assumed under the Plan or by previous Court order;
constitute authorization for Debtor's use of funds of the estate to meet any cash
requirement in the Case; and *will constitute an injunction against all entities that have
held, currently hold or may hold a Claim or other debt or liability against Debtor,
prohibiting them from taking any of the following actions against (i) Debtor, or any of its
past or present officers, directors, employees, consultants, attorneys or agents; (ii) the
Shareholder, or any of his relatives, heirs, affiliates, agents, attorneys or consultants; or
(iii) against any of their respective property, on account of, or in any way relating to, any
such Claim, debts or liabilities: (a) commencing or continuing in any manner any action
or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any
judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or
encumbrance; (d) asserting a setoff or right of subrogation of any kind against any debt,
liability or obligation due to Debtor or the Shareholder; and (e) commencing or
continuing any action, in any manner, in any place that does not comply with or is
inconsistent with the provisions of the Plan.*

Except as otherwise provided in the Plan and the Confirmation Order, upon the
Effective Date, all property of Debtor's estate will vest in Debtor free and clear of all
liens, claims and interests of all creditors of and interest holders in Debtor, except for
such liens or interests retained or expressly provided pursuant to the Plan.    Further,
confirmation will authorize Debtor to sell, transfer, or convey any of its assets or any
interest therein, whether in or out of the ordinary course of its Business, without the need
for further notice to parties in interest or approval by the Court.  Any such sale, transfer,
or conveyance may be on such terms as Debtor deems appropriate.

## VI.   GENERAL INFORMATION OF THE DEBTOR

### A.   GENERAL

Debtor is a privately owned Ohio corporation.  Debtor's primary source of income derives from the sale of mattresses and bedding supplies in its two stores. (Tuttle and Taylor)   Debtor's income fluctuates from month to month as mattress sales are a seasonal item.  The Debtor's main assets are its stock of mattresses at its two stores.   As of the Petition Date, the Debtor's books and records reflected that the Debtor had approximately $66,000 of assets and liabilities of $996,717.72.  For the fiscal year ending December 31, 2016, the Debtor showed gross receipts or sales of $1,465.058.87.  The Debtor's net income for 2016 was $22, 429.14.  As of the Petition Date, the Debtor's operations were run by Jerry Fogt, the President of the Debtor.  Mr. Fogt is the Debtor's statutory agent and is in charge of the day to day operations.  Mr. Fogt and Ken Hoffman, as of the effective date of the plan, will be the only shareholders of the Reorganized Debtor.   Debtor's operations are headquartered at 8400 Industrial Parkway Plain City, Ohio 43064.  Debtor has four employees that receive no benefits.  The Debtor does not envision that the number of employees will change or that they will be receiving any benefits in the future.  Mr. Jerry Fogt, officer and shareholder of the Debtor, receives an annual salary of $70,000 from the Debtor.  Mr. Ken Hoffman, receives no salary from the Debtor but from time to time works for the Debtor on a per diem basis when necessary.

### B.   PRE-AND POST-PETITION MANAGEMENT OF DEBTOR

The Pre- and Post-Petition Management of Debtor is discussed in the "Means of Execution Section" below.

C.      **PRE-BANKRUPTCY AND POST BANKRUPTUYCY FINANCIAL**

**PERFORMANCE**

Selected financial information concerning Debtor's operations prior to the
Petition Date is summarized as follows:

| FISCAL YEAR | NET PROFIT | GROSS REVENUES |
|---|---|---|
| 12/31/14 | $<84.257.00> | $3,521,961 |
| 12/31/15 | $206,300.00 | $2,586,676 |
| Post Petition | | |
| 12/31/16 | $22,429.14 | $1,465,058.87 |

D.      **CAUSES OF BANKRUPTCY**

The Debtor, through an Asset-Purchase-Agreement, purchased the Mattress Mart
Name, factory and 7 store locations on 8/20/2011. One of the two previous owners had
left the business and the remaining owner was ready to shut the business down after 29
years. The previous owner's spouse was dying  and the owner was spending $50,000 per
month in personal cash to keep it afloat. The Debtor paid $200,000 in cash and assumed
roughly $550,000 of liabilities for the Company. The Debtor sub-leased the factory and
employed 52 people. The Debtor had 7 retail stores and also sold its product on the
wholesale market. Due to over-capacity and not enough demand, the Debtor closed the
factory and sold the equipment in March, 2013. The number of employees was reduced
from 52 to 17. The Debtor maintained all 7 retail stores but exited the wholesale market
at that time.

In 2015 it became evident that the over-supply of stores selling mattress'
(including grocery stores, appliance stores, and furniture stories) was having a negative
revenue effect on 5 of the Debtor's 7 retail stores. The decision was made in June, 2015

to close 3 of these negative revenue stores.  In October, 2015  2 more negative revenue

stores were closed.  The remaining stores (Tuttle and Taylor) continue to perform well

and the Debtor's plan is to extend the leases at both stores for another 5 years.  The

Debtor has reduced its staff from 17 to 4 during this time period.  However, the Debtor

was still responsible for the lease deficiencies for the 5 closed stores along with other

outstanding debts.  The Debtor could not possibly hope to pay these lease deficiencies

and the remaining debts in a timely manner without endangering the viability of the

company.   These reasons necessitated the filing of this Chapter 11 case.

## VII.    SELECTED OPERATING AND FINANCIAL DATA

### A.    OPERATING PROFIT AND LOSS STATEMENTS

A copy of the Monthly Operating Report for the period ending December 2016 is

attached hereto as Exhibit "C". As reflected in the monthly operating report filed by

Debtor, period ending December, 2016, total revenue for Debtor on an accrual basis, was

$103,978.84 generating a net operating profit of $1,789.72 for that month.  For the year

of 2016  the Debtor generated $1,465.058.87 in total revenue with a net operating profit

of $22, 429.14.

### B.    REPRESENTATIONS

The referenced financial information represents the best estimate of Debtor's

management as to the items set forth therein and is believed to be based upon

assumptions that are reasonable.

**THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT**

**BEEN AUDITED. THE RECORDS KEPT BY DEBTOR WERE UTILIZED IN**

**FORMULATING THE PROJECTIONS.   THE BOOKKEEPING PERFORMED**

BY DEBTOR WAS DONE INTERNALLY AND DEBTOR HAS NO REASON
<u>NOT</u> TO RELY ON THE ACCURACY OF SAID INTERNAL RECORD-
KEEPING.  DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE
INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACIES.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

NOBILE& THOMPSON CO LPA, COUNSEL FOR DEBTOR, IS UNABLE TO
WARRANT OR REPRESENT THAT THE FINANCIAL INFORMATION
CONTAINED HEREIN IS WITHOUT INACCURACY.  NOBILE & THOMPSON
CO  LPA HAS NOT VERIFIED THE FINANCIAL INFORMATION
CONTAINED HEREIN, ALTHOUGH IT HAS NO ACTUAL KNOWLEDGE OF
ANY INACCURACIES.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## VIII.   <u>COMPARISON OF PLAN ALTERNATIVES</u>

Debtor believes that the Plan affords creditors and interest holders the potential
for the greatest recovery from Debtor's assets and, therefore, is in the best interests of the
creditors and interest holders.  Debtor has considered alternatives to the Plan such as
liquidation and a sale of its assets in the context of a Chapter 11 or Chapter 7 case.  In the
opinion of Debtor, such alternatives would not afford creditors or shareholders as great a
recovery potential as does the Plan.   If the Plan is not confirmed, the theoretical
alternatives include (a) liquidation under Chapter 7; (b) alternative plans of
reorganization; and, (c) dismissal of the Case.

### A.      <u>LIQUIDATION UNDER CHAPTER 7</u>

Debtor has undertaken a Liquidation Analysis under Chapter 7 of the Code.  The analysis provided is believed to be reasonable and conservative, and in accordance with 11 U.S.C. § 1129.  The result of such a liquidation would be a distribution of zero dollars to the holders of unsecured Allowed Claims. (See Attached Liquidation Analysis Exhibit E)  Accordingly, Debtor is firmly convinced that the distribution to holders of unsecured Allowed Claims proposed in the Plan is substantially greater than the distribution those creditors would receive if Debtor's assets were liquidated in a Chapter 7 proceeding.

Liquidation under Chapter 7 of the Code entails the appointment of a Trustee having no experience or knowledge of Debtor's business, its records, or assets.  A substantial waiting period would be required in order for any Chapter 7 Trustee to effectively wind up the Case.  Also, the value of Debtor's assets will be reduced in a liquidation scenario.

### 1.      Administrative Expenses Under Chapter 7

The administrative costs of the estate must be satisfied from the proceeds of a Chapter 7  liquidation.  The administrative costs would include the fees of the Chapter 7 Trustee, the cost of counsel for the Trustee and possibly the cost of accountants for the Trustee.

### 2.      Liquidation Analysis of the Estate

Debtor believes that liquidation under Chapter 7 would result in a substantial diminution of the value of its estate.  The conversion of the Case to one under Chapter 7 would, in all likelihood, result in the immediate cessation of Debtor's Business operations and the failure of Debtor to fulfill its ongoing contractual obligations to its creditors. Given the nature of the debt obligations, Debtor is certain that unsecured creditors would not realize any value from the forced liquidation of Debtor's assets in a Chapter 7

proceeding.  Finally, as earlier noted, there will be additional administrative expenses involved in the appointment of a Chapter 7 trustee and retention of attorneys and other professionals to assist the trustee, as well as unpaid, current expenses accruing to trade creditors, and taxing authorities.

Debtor has considered liquidation in the context of a Chapter 7 case.  In the analysis, Debtor has taken into account the nature, status, and underlying value of its assets and the extent to which such assets are subject to liens and security interests. Based on this analysis, Debtor believes that the gross proceeds from liquidation of all of its assets would yield no distribution to the holders of unsecured Allowed Claims.

**B.**      **DISMISSAL OF THE CASE**

If the Case was dismissed, Debtor submits that the secured creditors would seek to force a sale of Debtor's assets.  If that occurs, based on the foregoing, Debtor believes that the value of the assets available for unsecured creditors will be zero.

**IX.**      **DESCRIPTION OF DEBTOR AFTER CONFIRMATION**

On a post-confirmation basis, Debtor will continue to be an Ohio corporation

**X.**      **PAYMENT OF FEES; FILING OF POST CONFIRMATION REPORTS**

Debtor intends to pay on or before the Effective Date all fees payable under 28 U.S.C. § 1930(a)(6) and 11 U.S.C. § 1129(a)(12).   The Plan provides that after Confirmation, through the closing the Bankruptcy Case under § 350 of the Code and entry of a Ffinal Ddecree pursuant to Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Reorganized Debtor will pay all fees payable under 28 U.S.C. § 1930(a)(6), and will timely file with the Court and serve, as required by Rule 3020-2 of the Local Bankruptcy Rules of the Court, a report, or reports, of the actions taken, the

progress made toward the consummation of the Plan, and the time frame anticipated until

a final report and motion for the entry of a final decree can be filed with the Court.  The

reorganized Debtor shall file with the Court and provide the United States Trustee with

post-confirmation quarterly reports that shall include all ~~of their respective~~ disbursements

for the quarter, including ~~plan~~ payments pursuant to the Plan. These reports are in

addition to the ~~r~~Reports required by LBR 3020-2.  All fees payable pursuant to section

1930 of  Title 28 of the United States Code after the Effective Date shall be paid on a

quarterly basis until the Chapter 11 case is closed, converted or dismissed.   The

Reorganized Debtor shall liable for the payment of all quarterly fees due pursuant to

section 1930 of Title 28 after the Effective Date.

## XI.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The Plan and its tax consequences are complex.  The tax consequence of the Plan

will depend on factual determinations with respect to each creditor.  No ruling has been

or will be requested from the Internal Revenue Service prior to the Effective Date

regarding the tax consequences of the Plan. **BECAUSE THE TAX CONSEQUENCES**

**OF THE PLAN ARE COMPLEX AND MAY VARY BASED UPON INDIVIDUAL**

**CIRCUMSTANCES, THIS DISCLOSURE STATEMENT RENDERS NO ADVICE**

**ON THE TAX CONSEQUENCES ON THE IMPLEMENTATION OF THE PLAN**

**TO ANY PARTICULAR CREDITOR, TO DEBTOR, OR TO INTEREST**

**HOLDERS.  EACH SUCH PARTY IS URGED TO CONSULT HIS OR HER TAX**

**ADVISER AS TO THE CONSEQUENCES OF THE PLAN UNDER**

**APPLICABLE FEDERAL, STATE AND LOCAL TAX LAWS.**

The Debtor expects to pay its creditors a percentage of their allowed claims. Generally speaking, the Internal Revenue Code calls for inclusion of discharged or cancelled debt into gross income. However, the Internal Revenue Code also specifically excludes from gross income, all cancelled debt that occurs by operation of a discharge in a case filed under Title 11 of the United States Code. The Internal Revenue Code also states that to the extent the Debtor excludes from gross income, cancelled or discharged debt, the Debtor's future "tax attributes", including net operating business losses, must be reduced on a dollar for dollar basis until the discharged indebtedness exclusion has been satisfied. The Debtor has reviewed this provision, and understands the impact this Plan will have on its future income tax attributes.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

XII.    **CONCLUSION**

Debtor urges all impaired creditors to vote to ACCEPT the Plan and to evidence

such acceptance by returning their ballot by _____ ____, 2017.


Midwest Quality Bedding, Inc.

**/s/      Jerry Fogt          **
        Jerry Fogt, President